## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **No. 22-11-RJL-02** |
| | : | |
| **DION RAJEWSKI,** | : | |
| | : | |
| **Defendant.** | : | |

## MOTION TO DISMISS OF COUNTS 5, 10 & 12
## IN THE SECOND SUPERSEDING INDICTMENT
## <u>FOR FAILING TO STATE AN OFFENSE</u>

Defendant, Dion Rajewski, by and through undersigned counsel, hereby respectfully moves for the entry of an Order dismissing Counts 5, 10 and 12 of the Second Superseding Indictment [54] pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure for failing to state an offense.

In each of these counts, the government alleges a penalty enhancement based on a "deadly or dangerous weapon," a lachrymal agent, to wit OC/pepper spray." However, the lachrymal agent ("OC/pepper spray") is not a "deadly or dangerous weapon" within the meaning of the penalty enhancement and was not accurately represented to the grand jury in this case. Under the two-pronged *Arrington* test, the "deadly or dangerous weapon" must be (1) capable of causing serious bodily injury, and (2) defendant must have "used" or "carried" OC/pepper spray with the intent to cause serious bodily injury. *See United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002).

Here, there was a lack of probable cause for the grand jury to conclude that either prong was met. *See Wolff*, 840 F. Supp. at 323 (holding that a Rule 12(b)

motion to dismiss is proper when there is a lack of probable cause to establish an element of the offense at issue). (1) There is no evidence that the canister (MK-46) contained OC/pepper spray or was operable because it was not sprayed or otherwise activated therefore, it was not "capable of causing serious bodily injury," and (2) Mr. Rajewski did not "use" the MK-46 because he did not spray it, nor carry the OC/pepper spray because he never touched the trigger of the canister or hold it in a manner that would allow for the cannister to be used as a weapon.  Underpinning this motion is the government's filing of a Notice of Errata on August 30, 2024, (ECF 231) detailing this factual issue. Only after the defendant raised this issue did the government review the evidence and realize that the cannister Mr. Rajewski touched for mere seconds was not used in any way as a weapon on January 6th by Mr. Rajewski or any other rioter that day.  Therefore, the charges against Mr. Rajewski which reference the use of a dangerous or deadly weapon lack probable cause as alleged.  Moreover, it can be inferred from the government's filing that evidence of a different cannister, one Mr. Rajewski never touched or handled, was improperly presented to the grand jury in support of the charges against Mr. Rajewski.  In light of this information, Counts 5, 10 & 12 lack probable cause and should be dismissed against Mr. Rajewski.

## FACTS

### *The "Deadly and Dangerous Weapon" Penalty Enhancement at Issue*

1.      In the Second Superseding Indictment [54], Mr. Rajewski is charged with, among one other,[1] the following statutory violations:

---

[1]

 The other statutory violation is Disorderly Conduct in the Capitol Grounds or

2

      a.  Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1), (b)(1)(A), and (2) (Count 5);

      b.  Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2), (b)(1)(A), and (2) (Count 10);

      c.  Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4), (b)(1)(A) and (2) (Count 12).

*See United States v. Rajewski*, Case No. 1:22-cr-00011-RJL, ECF 54, at 4, 6, 7.

Each statutory violation has a penalty enhancement for the defendant's use or carrying of "a deadly and dangerous weapon." *See United States v. McHugh*, No. CR 21-453 (JDB), 2023 WL 2384444, at *4 (D.D.C. Mar. 6, 2023) (explaining that "a violation of 18 U.S.C. § 1752 carries a harsher potential penalty if the person 'uses or carries a deadly or dangerous weapon.' "); *United States v. Easterday*, No. CR 22-404 (JEB), 2024 WL 1513527, at *4 (D.D.C. Apr. 8, 2024) (the statute "imposes greater penalties on a perpetrator who "uses *or carries*" a deadly or dangerous weapon.") (emphasis in original); *United States v. Robertson*, 610 F. Supp. 3d 229, 237 (D.D.C. 2022) ("The law increases these violations from misdemeanors to felonies if 'the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon.'").

    2.    The grand jury charged Mr. Rajewski's "use and carry" of "lachrymal agent, to wit OC/pepper spray" as the "deadly and dangerous weapon." *See Rajewski*, Case No. 1:22-cr-00011-RJL, ECF 54, at 4, 6, 7.

---

Buildings, in violation of 40 U.S.C. § 5104(e)(2)(D) and 2 (Count 14). This violation does not have a "deadly and dangerous weapon" penalty enhancement.

### *Mr. Rajewski's Factual Conduct Relating to the OC/Pepper Spray*

In counsel's view, a review of the available government evidence *shows:*

A.      The OC/pepper spray canister (MK-46) touched by Mr. Rajewski was being passed by several individuals from the rear of the crowd toward the U.S. Capitol building.

B.      The man immediately behind Mr. Rajewski held the MK-46 over Mr. Rajewski's head. Mr. Rajewski looked up at the MK-46 for approximately two seconds, and then grabbed its handle – he never touched the trigger. The man behind Mr. Rajewski then gestured with his hand for Mr. Rajewski to pass the MK-46 to the man immediately in front of Mr. Rajewski. The man behind Mr. Rajewski tapped on the arm of the man in front of Mr. Rajewski to get his attention. When the man in front of Mr. Rajewski turned around, he took the MK-46 from Mr. Rajewski, and continued passing it forward.

C.      In total, Mr. Rajewski looked at the MK-46 for approximately two seconds before grabbing onto its handle, (without touching the trigger) possessed the canister for approximately seven seconds, and shared possession with the man behind Mr. Rajewski for approximately one of those seven seconds.

D.      Mr. Rajewski never sprayed the OC/pepper spray or otherwise activated the MK-46 device.  The device was never sprayed or discharged by Mr. Rajewski or anyone else that day.

E.      What happened to the MK-46 is now known based upon a letter received by undersigned counsel from the government dated August 30, 2024. (Exhibit 1 attached).  This letter references video which shows that the cannister

was promptly passed back to a rioter in a black winter hat and nobody ever sprayed it, not that rioter or anyone else.   The letter goes on to detail how that rioter in the black winter hat then descended the stairs with the cannister, took it with him as he descended the stairs by the tunnel and made his way to the West Plaza with the cannister slung over his left shoulder.  The government has no evidence that depicts this rioter ever discharging the cannister at any time on January 6, 2021.

This is in stark contrast to the allegations the government made against Mr. Rajewski's Co-defendant Zacharay Johnson.   The government accused Mr. Johnson was having passed up a cannister that was immediately discharged against police officers.  Mr. Johnson admitted this conduct in his statement of facts for his guilty plea.  Mr. Johnson admitted that, "after I passed the OC/pepper spray closer to the Archway and the Tunnel, the OC/pepper spray was sprayed by another protester at the UCSP officers protecting the Capitol building." *See United States v. Johnson*, Case 1:22-cr-00011-RJL, ECF146 at 3.   The government now admits that "Dion Rajewski does not appear to use or carry the cannister that was discharged."  (See Exhibit 1, page 1).

### *The Expert Witness Report of Emanuel Kapelsohn* ### *Rendering Opinion on Dangerousness of Pepper Spray*

Co-defendant Zachary Johnson filed, as part of his Sentencing Memorandum, an Expert's Report as to the nature and effects of OC/pepper spray. *See* Report of Emanuel Kapelsohn Rendering Opinion on Dangerousness of Pepper Spray ("Expert Report"). [ECF 170, Exhibit 2] The following facts are found in the Expert Report:

1.      The OC/pepper spray at issue was a Defense Technology "First Defense" MK-46 aerosol OC projector. *Id.* at 9. According to the Expert Report,

> d.  The designation "MK-46" indicates that the unit contains 46 ounces ("formulation weight") of contents. The unit looks like a small fire extinguisher, with an aluminum canister containing the OC formulation, and a lever-type actuator. When the actuator is pressed, the OC is discharged in a stream… The unit can be refilled and re-used many times. The MK46 refills are available in a range of OC strengths (see below), including 0.2%, 0.4%, 0.7%, 1.3%, and a mixture of 1.3% OC with 2% CS (orthoschlorobenzalmalonitrite) teargas. My understanding is that the MK-46 unit at issue in this case contained the 1.3% OC formulation.

*Id.* at 9-10.

2.      The effects are limited to the eyes and respiratory system. OC spray "irritates or inflames the mucous membranes in and around the eyes, nose, throat and airways." *Id.* at 10. As a result, "OC will, within several seconds of contact, cause an involuntary shutting of the eyes." *Id.* "Other physical effects of OC exposure that are often, but not always, seen can be a runny nose, coughing, difficulty in breathing, and a burning sensation in sensitive skin areas, including the face." *Id.*

3.      The effects are short-term. "Depending on the individual, the degree of exposure, the brand and type of OC and other factors, the duration of OC's physical effects usually ranges from about  20 to 90 minutes. Most individuals recover from the worst effects of the OC within 30-45 minutes." *Id.* (alteration added).

4.      Law enforcement use OC/pepper spray as a form of non-lethal force. On the "use of force continuum," which is a "schematic" that "help[s] officers understand the concept that there are lower-level and higher-level uses of force, and

that some uses of force are more invasive and more likely to cause serious injury than others[,]" OC/pepper spray "is typically placed either at Level 3 ('Physical Restraint and Control') or at Level 4 ('Intermediate Force') on the Force Continuum." *Id.* at 12 (alterations added). Mr. Kapelsohn "know[s] of no state, law enforcement agency, training academy or instructor that places OC at Level 5 (Deadly Force) on the Force Continuum." *Id.* (alteration added).

5.    Law enforcement officers in training are often intentionally sprayed with OC/pepper spray. "Many OC training programs for police and security officers, as well as most OC instructor programs I am familiar with, also include the trainees being sprayed with 'live' OC units - that is, units containing pepper - to familiarize the trainees with the effects of OC, and with the steps used to hasten recovery from those effects." *Id.* at 13.

6.    When law enforcement sprays suspects with OC/pepper spray, "suspects pepper sprayed by police are not taken to the hospital or provided with other professional medical care as a matter of course, but in most cases are simply allowed to flush their faces with cool water, and sometimes take the other steps listed above to hasten recovery from the effects of the pepper." *Id.* at 16. "Clearly the fact that individuals pepper sprayed by police are not even given medical care as a standard procedure indicates that pepper spray exposure is <u>not</u> considered likely to result in death or serious bodily harm." *Id.* (emphasis in original).

7.    It goes without saying that a cannister that is **never deployed** does not even come close to being a dangerous or deadly weapon within the meaning of the statute.

## LEGAL STANDARD

This Court recently recited the legal standard for failing to state an offense pursuant to Federal Rule of Criminal Procedure 12(b). *See United States v. Warnagiris*, 699 F. Supp. 3d 31, 39 (D.D.C. 2023). It stated:

> A defendant in a criminal case may move to dismiss an indictment or information before trial for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). In determining whether a charging document fails to state an offense, the operative question is "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011) (citing *United States v. Sampson*, 371 U.S. 75, 76, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962)). In considering a motion to dismiss, a court must accept the allegations in the indictment as true. *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009). The Court's analysis [...] "must be limited to 'the four corners of the indictment.'" *United States v. Montgomery*, 578 F. Supp. 3d at 59 n.1 (quoting *United States v. Safavian*, 429 F. Supp. 2d at 161 n.2).

> Because "[a]n 'indictment's main purpose is to inform the defendant of the nature of the accusation against him,'" an indictment that fails to do so because it is not specific enough is insufficient. *United States v. Ballestas*, 795 F.3d at 148-49 (quoting *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001)). A charging document "is sufficiently specific where it (1) contains the elements of the offense charged and fairly informs the defendant of those charges so that he may defend against them, and (2) enables him 'to plead [an] acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Safavian*, 429 F. Supp. 2d at 158 (quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). Ordinarily, an indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) ("In most cases, detailed allegations 'surely are not

contemplated by Rule 7(c)(1).' " (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 110, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007))). But, in cases where "guilt depends so crucially upon such a specific identification of fact, ... an indictment must do more than simply repeat the language of the criminal statute" so that a defendant is not forced to "go to trial with the chief issue undefined." *Russell v. United States*, 369 U.S. 749, 764-66, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

*Id.*

A motion to dismiss under Rule 12(b) can be maintained based on claim that there was no evidence from which grand jury could have indicted defendant, even though Rule 12(b) is limited to cases involving defects in indictments, because the issuance of an indictment based on grand jury decision made without an evidentiary basis is a defect in the indictment. *See United States v. Wolff*, 840 F. Supp. 322, 323 (M.D. Pa. 1993). This may happen in cases where the Government and Defendant do not dispute the facts at issue. *Id.* ("The facts presented to the court by both sides are consistent.").

## **ARGUMENT**

The penalty enhancement at issue does not define the term "deadly or dangerous weapon." *See* 18 U.S.C. § 1752(a)(1), (b)(1)(A), and (2) (Count 5); 18 U.S.C. § 1752(a)(2), (b)(1)(A), and (2) (Count 10); 18 U.S.C. § 1752(a)(4), (b)(1)(A) and (2) (Count 12).

In *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002), the D.C. Circuit defined the term "deadly or dangerous weapon" for the purpose of another penalty enhancement, 18 U.S.C. § 111(a)-(b), which uses the same language. The D.C. Circuit stated: "For an object that is not inherently deadly, the following additional element is required: (I) the object must be capable of causing serious

bodily injury or death to another person *and* (II) the defendant must use it in that manner." *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002) (cleaned-up; added numbering; emphasis in original; internal citations omitted).

This Court has applied the two-pronged *Arrington* test in several other January 6th cases where defendants were charged with using OC/pepper spray as a "deadly or dangerous weapon" for the penalty enhancement at issue. *See United States v. Easterday*, No. CR 22-404 (JEB), 2024 WL 1513527, at *6 (D.D.C. Apr. 8, 2024); *United States v. Ramey*, Case No. 1:22-cr-00184-DLF, ECF 56 at 312-321; *United States v. Robertson*, 610 F. Supp. 3d 229, 237–38 (D.D.C. 2022).

## I. CAPABLE OF CAUSING SERIOUS BODILY INJURY

Under the first prong, the OC/pepper spray must be capable of causing serious bodily injury. *See Arrington*, 309 F.3d at 45. Here, because the MK-46 was empty, it was neither (A) capable of nor (B) caused serious bodily injury. *See Wolff*, 840 F. Supp. at 323 (holding that a Rule 12(b) motion to dismiss is proper when there is a lack of probable cause to establish an element of the offense at issue).

### A. Capability

Capability depends on use. *See Arrington*, 309 F.3d at 45 (holding that a car is not capable when used solely "as a mode of transportation"); *Easterday,*2024 WL 1513527, at *6 (holding that OC/pepper spray is capable when sprayed); *Robertson*, 610 F. Supp. 3d at 238 (D.D.C. 2022) (in dicta, explaining that even a pen is capable if "defendant tightly gripped a pen in his hand, raised to his chest, with its tip facing out toward an approaching officer.").

This OC/pepper spray canister was not sprayed, nor is there any evidence it had the capability to be sprayed. When the MK-46 reached the front of the crowd, it was immediately passed back. This suggests that the OC/pepper spray canister was empty or inoperable and therefore no longer capable of causing serious bodily injury.

### B. Serious Bodily Injury

Courts define "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *United States v. McHugh*, No. CR 21-453 (JDB), 2023 WL 2384444, at *5 (D.D.C. Mar. 6, 2023) (quoting U.S.S.G.§ 1B1.1 n.1(M)); *see also Easterday*, 2024 WL 1513527, at *3 (same).

 For OC/ pepper spray, courts usually focus on the lower burden of whether it caused an "injury involving extreme physical pain," not whether it created "protracted impairment" of bodily or mental function or required "medical intervention such as surgery, hospitalization, or physical rehabilitation." *See, e.g., Easterday*, 2024 WL 1513527, at *12 ("A victim's 'description of his pain as an 8 or 8.5 on a scale of 1 to 10' is generally enough to support a finding of extreme physical pain… [here] [b]oth officers testified that they experienced pain at a 9 or 10 on a 10-point scale, and one described the feeling as having "battery acid thrown on your face.") (alterations added); *United States v. Neill*, 166 F.3d 943, 949 (9th Cir. 1999) (affirming application of sentencing enhancement for use of pepper spray as dangerous weapon based in part on extreme pain evinced by victim's testimony that

being sprayed felt "like [she] was on fire") (alteration in original); *Harris v. Warden,* 2015 WL 5231266, at *3 (W.D. La. Aug. 11, 2015) (upholding state-court determination that extreme physical pain "would include the pain inflicted by... pepper spray" based on the victim's testimony about pain).

Here, Mr. Rajewski does not contest that OC/pepper spray, **when sprayed**, has the capability of causing "an injury involving extreme physical pain." *See Easterday*, 2024 WL 1513527, at *12, *Neill*, 166 F.3d at 949, *Warden,* 2015 WL 5231266, at *3.  But it was not sprayed here.

## II. INTENT TO "USE" OR "CARRY" THE DEADLY OR DANGEROUS WEAPON IN A MANNER CAPABLE OF CAUSING SERIOUS BODILY INJURY

Under the second prong, a defendant must "use" or "carry" the deadly or dangerous weapon. *See Arrington*, 309 F.3d at 45. Mr. Rajewski did neither. *See Wolff*, 840 F. Supp. at 323 (holding that a Rule 12(b) motion to dismiss is proper when there is a lack of probable cause to establish an element of the offense at issue).

### A. "Use"

Defendant must intend to "use" the deadly or dangerous weapon in a manner capable of causing serious injury. *See Arrington*, 309 F.3d at 45; *Easterday*, 2024 WL 1513527, at *6; *Ramey*, Case No. 1:22-cr-00184-DLF, ECF 56 at 312-321.

For OC/pepper spray, a court must conclude that the Government "produce sufficient evidence on which" the district court could conclude that the defendant "used" pepper spray as a "dangerous weapon." *See McHugh*, No. CR 21-453 at *5. For example, in *Perez*, the court determined that the evidentiary record may consist

of "the form or nature of the pepper spray, its chemical composition, the strength or concentration of the active agent, the size of the can, whether the spray mechanism was functional, or the distance or velocity the mechanism was designed to achieve[.]" See *United States v. Perez*, 519 F. App'x 525, 527 (11th Cir. 2013). If the evidentiary record is silent as to these facts about defendant's use, then there is no factual basis for the court to conclude that pepper spray is a dangerous weapon. *Id.*

Two other January 6th cases are instructive about defendants' "use" of OC/pepper spray. In the first case, *Easterday*, the court determined that defendant "used" the OC/pepper spray with the intent to cause serious bodily injury. *See Easterday*, 2024 WL 1513527, at *11. It explained that "Easterday's manner of use — spraying into his victims' faces for upwards of eight seconds and from no further than ten feet away — was at least capable of causing the average person extreme physical pain." *Id.* In the second case, *Ramey*, the court determined that defendant did *not* "use" the OC/pepper spray with the intent to cause serious bodily injury. *See Ramey*, Case No. 1:22-cr-00184-DLF, ECF 56 at 312-321; ECF 49 at 2. It explained, "While the government may have shown that pepper spray is capable of causing serious bodily injury or death, it has not proven beyond a reasonable doubt that Mr. Ramey used it in such a manner... The video shows Mr. Ramey deploying a quick burst of pepper spray towards Officer Riggleman's eyes no more than 1 second. The spray toward Officer Williams's eyes appears to be a similar duration." *Id.* ECF 56 at 312-321. Moreover, the Court stated, "I do not find that the government has proven beyond a doubt that Mr. Ramey was closer than 6 feet from either officer, the distance at which the officers are trained to spray and the approximate distance

at which they were sprayed during training. And the government provided absolutely no evidence or testimony that Mr. Ramey was closer than 3 feet to the officers, the distance within which serious bodily injury, needling, and retina damage can occur." *Id.* (omitted internal citations).

Here, this case is distinguishable. Mr. Rajewski did not "use" the OC spray at all. Mr. Rajewski merely passed MK-46 over his head to another member of the crowd who passed it forward to someone who never deployed the cannister and eventually left with it from the grounds. Nobody ever sprayed it and the government admits this now.

Therefore, the Government will not be able to introduce any facts into evidence that Mr. Rajewski "used" the OC spray. *See Perez*, 519 F. App'x at 527 (explaining that the factual record must contain evidence about defendant's "use" of OC/pepper spray).

### B. "Carried"

Defendant must intend to "carry" the deadly or dangerous weapon in a manner capable of causing serious injury. *See Arrington*, 309 F.3d at 45 (D.C. Cir. 2002). Unlike *Easterday* and *Ramey* where defendants were charged solely with their "use" of OC/pepper spray, there does not appear to be another January 6 case (besides Mr. Rajewski's former co-defendants, who have not yet proceeded through trial) where the defendant has also been charged with "carrying" OC/pepper spray.

The Supreme Court, in *Muscarello*, defined "carried" as a "knowingly possess[ing]." *Muscarello v. United States*, 524 U.S. 125, 126–27 (1998). So too did the D.C. Circuit. *See, e.g., United States v. Toms*, 136 F.3d 176, 181 (D.C. Cir. 1998)

(explaining that for the defendant to be convicted of knowingly possessing a firearm, "the jury had to credit the officers' testimony regarding the location of the gun—on the passenger's seat of the car Toms was driving—and conclude that Toms was aware of the gun's presence."). This Court, in other January 6 cases, has also consistently held that "carried" means that the defendant knowingly possessed the deadly or dangerous weapon. *See, e.g., United States v. Hostetter*, No. 1:21-CR-392-L-RCL, 2023 WL 4539842, at *5 (D.D.C. July 13, 2023) ("Mr. Hostetter then carried his backpack containing the hatchet onto Capitol Grounds and retained that backpack the entire time he was there."); *Robertson*, 610 F. Supp. 3d at 238 ("The government's best evidence is the body-worn-camera footage showing Robertson raising the stick in front of his chest and clutching it in a military-trained 'port arms' position as officers approached him, while working their way through the crowd just outside the Capitol building."); *United States v. Reffitt*, 602 F. Supp. 3d 85, 92 (D.D.C. 2022) (defendant said "I had my ... 40 on my side.").

### 1. Possession

The D.C. Circuit has held that the Government may not establish a defendant's constructive possession of contraband solely by showing that the defendant had shared access with others. *See United States v. Harris,* 515 F.3d 1307, 1310 (D.C.Cir.2008) (explaining that in joint-occupancy settings, the government must present some evidence of "*knowing* dominion and control" because "a contrary view could unfairly sweep up unwitting roommates or housemates") (emphasis in original). In joint-occupancy settings, there needs to be some

"additional evidence" of control. *United States v. Boyd*, 803 F.3d 690, 692 (D.C. Cir. 2015).

Here, Mr. Rajewski touched an object he could not even identify as an MK-46 for approximately seven seconds after it was held over his head by the person behind him.

## 2. Knowing

The Supreme Court has consistently held that "knowingly" means that the defendant knows the "characteristics" of the item he possesses. *See, e.g., Staples v. United States,* 511 U.S. 600 (1994) (defendant must know that the item he possessed had the "characteristics" that brought it within the statutory definition of a firearm); *Rogers v. United States*, 522 U.S. 252, 255 (1998) ("petitioner's admission that he knew the item was a silencer constituted evidence sufficient to satisfy the *mens rea* element of the charged offenses.") (emphasis in original). So too has the D.C. Circuit. *See United States v. Alston-Graves*, 435 F.3d 331, 337 (D.C. Cir. 2006) ("the word 'knowingly'... means that the defendant realized what she was doing and was aware of the nature of her conduct and did not act through ignorance, mistake or accident.").

Here, there is no evidence that Mr. Rajewski knew what was being passed over his head at all, let alone that the MK-46 was, indeed, OC/pepper spray.  There is also no evidence that the cannister had any contents or was operable at all.  Mr. Rajewski looked at the canister for approximately two seconds. Moreover, Mr. Rajewski's possession of the MK-46 was orchestrated by the man behind him. This means Mr. Rajewski's conduct was motivated by blind ignorance, not knowledge.

*See Staples,* 511 U.S. at 600; *Rogers*, 522 U.S. at 255; *Alston-Graves*, 435 F.3d at 337.

## CONCLUSION

WHEREFORE, for the foregoing reasons and such other reasons that may appear just and proper, Mr. Rajewski respectfully asks that this Court find that there was no evidence for the grand jury to conclude that lachrymal agent ("OC/pepper spray") is a "deadly or dangerous weapon" within the meaning of the penalty enhancement. *See* 18 U.S.C. § 1752(a)(1), (b)(1)(A), and (2) (Count 5); 18 U.S.C. § 1752(a)(2), (b)(1)(A), and (2) (Count 10); 18 U.S.C. § 1752(a)(4), (b)(1)(A) and (2) (Count 12). Consequently, this Court should enter an Order dismissing Counts 5, 10 & 12 of the Second Superseding Indictment [54]. *See Wolff*, 840 F. Supp. at 323 (holding that a Rule 12(b) motion to dismiss is proper when there is a lack of probable cause to establish an element of the offense at issue).

Defendant, by counsel, requests a hearing on this motion.

Respectfully Submitted,

_____
Allen H. Orenberg, # 395519
The Orenberg Law Firm, LLC
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
Tel. No. (301) 807-3847
Fax No. (240) 638-6701
aorenberg@orenberglaw.com
Counsel for Mr. Dion Rajewski

**CERTIFICATE OF SERVICE**

I hereby certify that this Motion to Dismiss of Counts 5, 10 & 12 in the Second Superseding Indictment For Failing to State an Offense and a proposed Order was filed using the CM/ECF system, thereby providing notice of service to all case registered parties this 4th day of September, 2024.

_____
Allen H. Orenberg